**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X

SAMUEL WHITE,

        Plaintiff,    **REPORT AND RECOMMENDATION**

  v.           19-cv-05246 (GRB) (ST)

ALYSSA PAWELSKY,

        Defendant.
--------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

  Samuel White ("Plaintiff") commenced this action against Alyssa Pawelsky

("Defendant") on September 13, 2019, alleging claims of defamation and tortious interference

with prospective economic advantage.  Plaintiff filed a Motion for Default Judgment against

Defendant.  The Honorable Gary R. Brown referred Plaintiff's Motion to the undersigned to

issue a Report and Recommendation.  For the reasons set forth below, this Court respectfully

recommends that Plaintiff's Motion for Default Judgment be DENIED without prejudice and that

Plaintiff be given the opportunity to replead the Complaint.

  **I.**  **BACKGROUND**

    **a.** **Factual Background**

  Plaintiff is an individual and resident of New Jersey.  Compl. ¶ 1, Dkt. No. 1.  Defendant

is an individual and resident of Nassau County, New York.  *Id.* ¶¶ 2, 4.  Plaintiff and Defendant

were in a romantic relationship in March and April of 2018.  *Id.* ¶ 5.

  Plaintiff had been in the waste disposal business.  *Id.* ¶ 6.  On or about March 6, 2018,

Plaintiff made Defendant aware that Plaintiff intended to apply for an upcoming municipal

contract with the Town of Brookhaven, New York.  *Id.* ¶ 11.  The contract was for a term of

seven years with a three-year roll-over, for a total of ten years. *Id.* ¶ 12.  Based on the price per unit in Plaintiff's bid, if Plaintiff's bid was successful, the town would have paid Plaintiff or his business a total of $3,541,382.04 on the municipal contract. *Id.* ¶¶ 7, 8, 13.  On or about March 14, 2018, Defendant gave Plaintiff $27,000.00 to help Plaintiff pay the filing fees associated with the application. *Id.* ¶ 14.  There was no contract between the parties. *Id.* ¶ 16.  The parties discussed the application process and Defendant was aware that Plaintiff would be subject to criminal activity and background investigations. *Id.* ¶ 17.  The parties also discussed that, per the application, the municipality would return their money only if it officially rejected Plaintiff's bid. *Id.* ¶ 18.  Plaintiff applied for the bid on March 15, 2018. *Id.* ¶ 19.  Plaintiff was the lowest bidder. *Id.*  On April 12, 2018, Plaintiff had a meeting with a town representative regarding his bid documents. *Id.* ¶ 23.

On April 13, 2018,[1] the parties had an argument via text message and Defendant told Plaintiff she no longer wanted to be his girlfriend and wanted the $27,000.00 back. *Id.* ¶ 24.  No cash was available. *Id.* ¶ 25.  Within days, Defendant made an allegation of domestic abuse against Plaintiff to the Port Authority Police. *Id.* ¶ 26.

According to Plaintiff, Defendant or a representative of Defendant contacted the Town of Brookhaven about Plaintiff's bid. *Id.* ¶ 27.  The town then asked Plaintiff to withdraw his bid. *Id.* ¶ 28.  The town awarded the contract to another bidder on or about May 3, 2018. *Id.*

---

[1] The Complaint identifies the date of the text message argument as "April 13, 2019." *Id.* ¶ 24. However, it also states this argument took place the day after Plaintiff's April 12, 2018 meeting with a town representative. *See id.* ¶¶ 24-25.  Similarly, the Complaint states that Defendant completed a police report on May 11, 2019. *Id.* ¶ 30.  An affidavit submitted by Plaintiff in connection with the instant Motion suggests Defendant made the report on May 11, 2018. White Aff. ¶ 16, Dkt. No. 24-1.  The Court assumes the inclusion of "2019" in the body of the Complaint was a typographical error, and that the events described occurred on the corresponding dates in 2018.

On May 9, 2018, Defendant, through her attorney, signed a summons with notice for a New York State Court action. *Id.* ¶ 29. The summons was neither filed nor issued on that date. *Id.* On May 11, 2018, Defendant filed with the Suffolk County Police Department a statement describing a violent incident involving Plaintiff on March 12, 2018 and a history of domestic violence by Plaintiff. *Id.* ¶ 30. Defendant filed her lawsuit and, in the complaint, alleged Plaintiff attacked Defendant to induce Defendant to give him money for the bid. *Id.* ¶¶ 30-31. Plaintiff denied the claims in the suit brought by Defendant. *Id.* ¶ 32.

### b. Procedural History

Plaintiff commenced this action against Defendant on September 13, 2019, alleging claims of defamation and tortious interference with prospective economic advantage. *See generally id.* A summons was issued as to Defendant on October 7, 2019. *See generally* Summons Issued, Dkt. No. 5. Defendant, *pro se*, answered the Complaint on December 19, 2019. *See generally* Answer, Dkt. No. 9. Defendant failed to appear at the initial conference on February 10, 2020 and the initial conference was rescheduled for March 17, 2020. Min. Entry Feb. 10, 2020 Initial Conference Hr'g, Dkt. No. 13. When Defendant again failed to appear on March 17, 2020, this Court issued an Order to Show Cause that directed Defendant to appear on May 6, 2020 to show cause why a default judgment should not be entered against her for failure to defend. Min. Entry Mar. 17, 2020 Telephone Conference, Dkt. No. 15. The Court further warned that if Defendant failed to appear, it would recommend striking Defendant's Answer and directing the entry of a default judgment. *Id.* Plaintiff filed a Motion for Sanctions on March 30, 2020. *See generally* Mot. Sanctions, Dkt. No. 17. Defendant again failed to appear on May 6, 2020, and this Court granted Plaintiff's Motion for Sanctions and recommended Defendant's Answer be stricken and default be entered against Defendant. Min. Order May 6, 2020 Show

3

Cause Hr'g, Dkt. No. 18; R. & R. Mot. Sanctions, Dkt. No. 20.  The Honorable Gary R. Brown adopted this Court's recommendation, ordering Defendant's Answer to be stricken and directing the Clerk of Court to enter default against Defendant.  Electronic Order, June 18, 2020.  On June 19, 2020, the Clerk of Court entered default against Defendant.  *See generally* Clerk's Entry Default, Dkt. No. 22.

Plaintiff filed the instant Motion for Default Judgment.  *See generally* Mot. Default J. ("Mot."), Dkt. No. 24.  In support of the Motion, Plaintiff submitted his own Affidavit, and the following documents: the bid tally compiled by the Town of Brookhaven, Dkt. No. 24-2; text messages between Plaintiff and Defendant ("Text Exchange"), Dkt. No. 24-3; a page from the State Court summons dated May 9, 2018, in which Defendant is plaintiff and Plaintiff and Legends Waste Service are defendants, Dkt. No. 24-3; Defendant's statement to the Suffolk County Police Department ("Police Statement"), Dkt. No. 24-3; and the Town of Brookhaven's resolution regarding the bids, Dkt. No. 24-4.

## II.  LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).  In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored."  *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95–96 (2d Cir. 1993).  "Accordingly, just because a party is in default,

4

the plaintiff is not entitled to a default judgment as a matter of right." *Mktg. Devs., Ltd. v. Genesis Imp. & Exp., Inc.*, No. 08-CV-3168 (CBA) (CLP), 2009 WL 4929419, at *2 (E.D.N.Y. Dec. 21, 2009) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).

On a motion for default judgment, the Court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). In determining whether to issue a default judgment, the Court has the responsibility to ensure that plaintiff's "allegations establish [defendant's] liability as a matter of law." *Id.*; *accord City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). In other words, "after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Rolls–Royce PLC v. Rolls–Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citation omitted).

## III.    DISCUSSION

### a.  Jurisdiction

This Court thus has diversity of citizenship jurisdiction over the instant matter. *See* 28 U.S.C.A. § 1332. Venue is proper because Defendant resides in Nassau County. *Id.* §1391(b).

### b.  Default

Despite a summons being issued and Defendant's answering Plaintiff's Complaint, Defendant failed to appear before the Court on three consecutive occasions. *See* Summons Issued; Answer; Min. Entry Feb. 10, 2020 Initial Conference Hr'g; Min. Entry Mar. 17, 2020 Telephone Conference; Min. Order May 6, 2020 Show Cause Hr'g. Accordingly, this Court recommended striking Defendant's Answer and directing default to be answered against Defendant. Min. Order May 6, 2020 Show Cause Hr'g; R. & R. Mot. Sanctions. The Honorable

Gary R. Brown adopted this Court's recommendation.  Electronic Order, June 18, 2020.  The Clerk of Court entered default against Defendant.  Clerk's Entry Default.  Thus, per the standard provided by Federal Rule of Civil Procedure 55(a), Defendant is properly considered to have admitted all factual allegations in the Complaint and is subject to this Court's assessment of its liability thereby.

### c.  Liability

#### i.  Defamation

Plaintiff alleges defamation against Defendant.  Compl. ¶¶ 33-38.  To prevail on a defamation claim, a plaintiff must show: "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se." *Dillon v. City of N.Y.*, 704 N.Y.S.2d 1, 5 (App. Div. 1999).  "A false statement constitutes defamation per se when it charges another with a serious crime or tends to injure another in his or her trade, business, or profession." *Geraci v. Probst*, 877 N.Y.S.2d 386, 388 (App. Div. 2009).  "Courts in this circuit have rejected defamation claims where the plaintiff failed to plead facts sufficient to explain how the alleged statements were false." *Marom v. Pierot*, 18 Civ. 12094 (VB)(JCM), 2020 WL 1862974, at *5 (S.D.N.Y. Jan. 16, 2020) (collecting cases), *adopted by* 2020 WL 1444938 (S.D.N.Y. Mar. 25, 2020).  Further, "[p]ublic policy requires that certain communications, though defamatory, are privileged, and may not serve as the basis for a defamation action." *Boice v. Unisys Corp.*, 50 F.3d 1145, 1149 (2d Cir. 1995).  This "absolute privilege attaches to all communications made in the course of a judicial proceeding and that are pertinent to the pending proceeding, such as statements in a complaint." *Collins v. Travers Fine Jewels Inc.*, 16-CV-03780 (SN), 2017 WL 1184305, at *3 (S.D.N.Y. Mar. 29, 2017); *see also*

*Aequitron Med., Inc. v. Dyro*, 999 F. Supp. 294, 297-98 (E.D.N.Y. 1998) ("[i]n the context of a legal proceeding, statements by parties and their attorneys are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation") (citation omitted). The "test to determine whether a statement is pertinent to litigation is extremely liberal, such that the offending statement, to be actionable, must have been outrageously out of context." *Flomenhaft v. Finkelstein*, 8 N.Y.S.3d 161, 164-65 (App. Div. 2015) (internal citations, quotation marks omitted).

Here, Plaintiff identifies several alleged false statements made by Defendant. Specifically: the Police Statement that Defendant made to the Suffolk County Police Department on May 11, 2018, which alleged that a violent incident occurred on March 12, 2018; an allegation of domestic abuse to the Port Authority Police; and an allegation that Plaintiff attacked Defendant so Defendant would give him money, which was made in a now-dismissed complaint from a civil action filed by Defendant against Plaintiff. Compl. ¶¶ 26, 30. Plaintiff's Complaint claims in a conclusory manner that Defendant's statements of abuse and violence by Plaintiff are false. It does not allege facts to the effect that the March 12, 2018 incident did not occur or that Plaintiff did not abuse Defendant. The Complaint sufficiently pleads facts to demonstrate that Defendant's allegation that "plaintiff attacked her for the purpose of inducing her to give him the bid money," made in a complaint filed in a related case, is false. However, as discussed below, this statement by Defendant cannot form the basis of Plaintiff's defamation claim. Compl. ¶ 30.

Plaintiff asserts that the Text Exchange between the parties confirms that Defendant's statements concerning Plaintiff's violence and abuse toward Defendant are false. *See* Compl. ¶¶ 26, 31. However, the Text Exchange was not submitted with Plaintiff's Complaint, but rather with his Motion. A "defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, *without more*, establish the defendant's liability on each asserted cause of action." *Perez v.*

7

*Queens Boro Yang Cleaner, Inc.*, 14-CV-7310 (SJ) (JO), 2016 WL 1359218, at *2 (E.D.N.Y. Mar. 17, 2016) (emphasis added) (citing *Finkel*, 577 F.3d at 84), *adopted by* 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016).  Accordingly, the Text Exchange cannot be used to demonstrate Defendant's liability on default.  Even if this were not the case, as the below analysis indicates, the Text Exchange would not be sufficient to establish liability.

### 1. The Police Statement

The Complaint states, "on May 11, 201[8], [Defendant] went to the Suffolk County Police and filed additional false allegations, completing a police report alleging an incident of 'strangulation' that she alleged occurred on March 12, 2018 . . . as well as claiming a history of egregious domestic violence by [Plaintiff]."  Compl. ¶ 30.  As mentioned, the Complaint does not plead facts that impugn the truthfulness of the Police Statement or demonstrate that the March 12, 2018 strangulation incident did not take place.

Even considering the Text Exchange and Police Statement, both submitted with Plaintiff's Motion, Plaintiff still does not show Defendant's statements are false.  In a message dated March 11, 2018, Defendant states, "I feel so safe next to you."  Text Exchange.  The message predates the March 12, 2018 incident described in the Police Statement; it thus does not show that the alleged March 12, 2018 incident did not take place as described.  Police Statement. This March 11, 2018 text message might cast doubt on an alleged history of domestic abuse, however Defendant does not date prior incidents and cites as an example only events that occurred "in Puerto Rico, which [she] reported to the Port Authority Police at JFK airport." Police Statement.  As discussed below, Defendant's alleged domestic abuse claim to the Port Authority Police occurred more than a month after March 11, 2018.

Similarly, Defendant's text message stating that she gave him "$25,000 out of the kindness Of [her] heart" does not undermine the Police Statement.  Text Exchange.  While the Police Statement avers Plaintiff and Defendant "started to have an argument about money [Plaintiff] wanted to borrow from [Defendant]" and that violence ensued, the statement does not suggest Defendant ever gave Plaintiff money or her reason for doing so.  Police Statement.  The Police Statement therefore does not conflict with the text message concerning Defendant's motives for giving Plaintiff money.

### 2.  The Claim to Port Authority Police

Plaintiff identifies as a false statement by Defendant an "allegation of domestic abuse against [Plaintiff] to the Port Authority Police."  Compl. ¶ 26.  Plaintiff does not note what the allegation entailed.  Nonetheless, again, the Complaint does not allege facts to show Plaintiff did not abuse Defendant, but simply characterizes the allegation as false in conclusory fashion.  Nor does the Text Exchange show that Defendant's statement is necessarily false.  Though Plaintiff provides very little detail about Defendant's claim to the Port Authority Police, the Complaint makes clear that Defendant made the claim after April 13, 2018, and thus more than a month after the March 11, 2018 text message stating she "feel[s] so safe next to" Plaintiff.  *See* Compl. ¶¶ 24-26 ("on April 13, 201[8], [there was] an argument between the parties via text message . . . .  Within days, [Defendant] made a false allegation of domestic abuse against [Plaintiff] to the Port Authority Police)."

### 3.  The Allegation in the Related Civil Case

Plaintiff's Complaint avers that Defendant "alleged in a complaint that [Plaintiff] attacked her for the purpose of inducing her to give him the bid money."  *Id.* ¶ 30.  The Complaint also pleads facts that show Defendant's allegation is false, by showing Defendant had

a different motivation for giving Plaintiff the money. Specifically, the Complaint states, "[t]ext messages confirm the money was voluntarily given to plaintiff 'out of the kindness of [Defendant's] heart.'"  *Id.* ¶ 16.   Nonetheless, as a statement made during judicial proceedings, Defendant's allegation in a complaint from a related civil case cannot be the basis for a defamation claim.  *See Manhattan Sports Rests. of Am., LLC v. Lieu*, 45 N.Y.S.3d 468, 469 (App. Div. 2017) (dismissing defamation claims against plaintiff and third-party defendant, where "alleged defamatory statements made in the complaint by plaintiff at the direction of third-party defendant . . . are absolutely privileged, because they were made in the course of a judicial proceeding"); *see also Sexter & Warmflash, P.C. v. Magrabe*, 828 N.Y.S.2d 315, 322 (App. Div. 2007) (dismissing defamation claim on grounds of absolute privilege, where defendants did not argue privilege but facts making privilege applicable appear on face of record and plaintiff could not have avoided effect of privilege had it been raised), *abrogated on other grounds by Front, Inc. v. Khalil*, 24 N.Y.3d 713 (2015).[2]

Given the foregoing, Plaintiff has not pleaded facts that plausibly demonstrate that Defendant made a false statement.  Accordingly, his defamation claim fails.  *See Marom*, 2020 WL 18262974, at *5-6 (recommending dismissal of defamation claim where plaintiff makes conclusory claims of falsity but "fails to plead facts that plausibly demonstrate the falsity of the alleged statements").

---

[2] The Court notes that absolute privilege "will not be conferred where the underlying lawsuit was a sham action brought solely to defame the defendant."  *Flomenhaft*, 8 N.Y.S.3d at 165.  Plaintiff has characterized the related case as "bogus," but has neither alleged Defendant brought the related case solely to defame Plaintiff nor offered facts to support such an allegation.  *See* White Aff. ¶ 17.  Though he argues the allegation from the complaint in that case is false, he does not aver the allegation was not pertinent to the case.  *See* Compl. ¶ 30.  Instead, Plaintiff suggests Defendant used the allegation to "try to gain leverage" in the related case.  White Aff. ¶ 17; *see Sexter & Warmflash, P.C.*, 828 N.Y.S.2d at 324 ("any doubts are to be resolved in favor of pertinence").

### ii.  Tortious Interference with Prospective Economic Advantage

Plaintiff alleges tortious interference with prospective economic advantage against Defendant.  Compl. ¶¶ 39-46.  The elements of tortious interference with prospective economic advantage are: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."  *Katz v. Travelers*, 241 F. Supp. 3d 397, 404 (E.D.N.Y. 2017) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)).  "To establish the third element of tortious interference, the plaintiff[] must demonstrate that the defendant[] acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort."  *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 241 (S.D.N.Y. 2018); *see also 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) ("When a defendant has acted with a permissible purpose, such as 'normal economic self-interest,' wrongful means have not been shown, even if the defendant was 'indifferent to the [plaintiff's] fate.'") (quoting *Carvel Corp. v. Noonan*, 3 N.Y.S.3d 182, 190 (2004)).  Further, a plaintiff must establish that it "would have entered into an economic relationship but for the defendant's wrongful conduct."  *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 107 (2d Cir. 2009); *Tucker v. Wyckoff Heights Med. Ctr.*, 52 F. Supp. 3d 583, 598 (S.D.N.Y. 2014).

Plaintiff alleges that "[Defendant] or a representative on her behalf . . . contacted the town of Brookhaven regarding the bid, intentionally and with malice, interfering for the purpose of causing harm."  Compl. ¶ 27.  He further reasons, Defendant "alleged in her lawsuit against [Plaintiff] . . . that she received information about [Plaintiff's] bid" and that Defendant "would not have received any information from the town unless she reached out to them directly."

White Aff. ¶ 15.  Taking the facts alleged as true, Plaintiff has demonstrated that Defendant contacted the town "regarding the bid."  The Complaint does not, however, allege facts to show, for example, whether Defendant contacted the town to report abuse allegations or to determine if the bid was rejected so she might seek the return of the bid money from Plaintiff.  As Plaintiff does not allege with any specificity whatsoever what information, if anything, Defendant communicated to the town, Plaintiff's assertion that Defendant acted solely with malice is conclusory.  Thus, the allegations in the Complaint do not demonstrate that Defendant acted solely out of malice for purposes of proving tortious interference.  *See John R. Loftus, Inc. v. White*, 540 N.Y.S.2d 610, 612 (App. Div. 1989) (finding conclusory allegation of malice insufficient to state cause of action for tortious interference).  Nor does the Complaint even allege that Defendant's contact with the town amounts to a crime or independent tort.  Accordingly, Plaintiff fails to establish at least the third element.  Further, the facts as alleged do not show that Plaintiff would have been awarded the contract but for Defendant's alleged interference.

Plaintiff also contends that Defendant "made a false claim of domestic abuse against [Plaintiff] to the Port Authority Police, knowingly and purposely to put those charges before the township, as she knew the background investigation would reveal it."  Compl. ¶ 26.  Construing this as an alternative basis for Plaintiff's tortious interference claim, the Court finds it duplicative of Plaintiff's defamation claim.  "New York law considers claims sounding in tort to be defamation claims . . . where those causes of action seek damages only for injury to reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his reputation."  *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (quoting *Jain v. Sec. Indus. & Fin. Mkts. Ass'n*, No. 08 Civ. 6463, 2009 WL 3166684, at *9 (S.D.N.Y. Sept. 28,

12

2009)).  Here, the alleged interference and economic injuries, the loss of the value of the contract for which Plaintiff bid, flow from reputational damage.  That is, the revelation to the town of Defendant's abuse claim allegedly led the town to request that Plaintiff withdraw his bid.  This sounds in defamation and should be foreclosed as duplicative.  *See, e.g.*, *Deaton v. Napoli*, 17-CV-4592 (RRM) (GRB), 2019 WL 4736722, at *9 (E.D.N.Y. Sept. 27, 2019) (finding tortious interference claim alleging loss of business relationship based on allegations of harassment and marital infidelity to be duplicative of defamation claim); *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 520 (S.D.N.Y. 2017) (finding tortious interference claims duplicative of defamation claim where former were based on allegations of defamatory statements); *Pusey v. Bank of Am., N.A.*, 14-CV-04979 (FB)(LB), 2015 WL 4257251, at *4 (E.D.N.Y. July 14, 2015) (finding tortious interference claim concerning plaintiff's inability to find work because of bank's "alleged publication of defamatory statements to her prospective employers through the shared job application software" to be duplicative of defamation claim).  Courts have found tortious interference claims duplicative even where the underlying defamation claim is not viable and has been dismissed.  *See, e.g.*, *Hengjun Chao*, 476 F. App'x at 894-95 (affirming dismissal of defamation claim and dismissal of tortious interference claim as duplicative of defamation claim); *Deaton*, 2019 WL 4736722, at *5-9 (dismissing defamation claim on grounds of untimeliness and privilege, and dismissing tortious interference claim as duplicative of dismissed defamation claim).

Based on the above, Plaintiff's claim for tortious interference with prospective economic advantage fails.

## IV.    CONCLUSION

Because Plaintiff's defamation and tortious interference claims both fail, the Court respectfully recommends Plaintiff's Motion for Default Judgment be DENIED without prejudice and that Plaintiff be given the opportunity to replead the Complaint.

## V.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
        March 14, 2021

14